**In re James E. KURANDA, Debtor.**

**Robert C. TEATES, Plaintiff,**

**v.**

**James E. KURANDA, Defendant.**

**Bankruputcy No. 89–00032–AT.
Adv. No. 89–0362–AT.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Sept. 28, 1990.

H. Jason Gold, Valerie P. Morrison, Gold & Stanley, P.C., Alexandria, Va., for plaintiff.

Roy B. Zimmerman, Alexandria, Va., for debtor/defendant.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

The plaintiff Robert C. Teates brought this dischargeability adversary proceeding against the debtor pursuant to 11 U.S.C. § 523(a)(2)(B). Trial was held on November 3, 1989, at which time the court also heard argument on the debtor's motion for summary judgment. Following trial the parties have submitted briefs.

In addition to the adversary proceeding, the court has for consideration the plaintiff's motion for sanctions against the debtor based upon the debtor's failure fully to comply with the court's order to compel discovery entered on October 20, 1989.

### Findings of Fact

The debtor was a real estate developer and builder during the time in which the events at issue took place. Under various contractual arrangements, the debtor built residential homes in a subdivision known as Whitewood Forest located in Fauquier County, Virginia.

The debtor conducted his real estate business in part through a corporation, Incline Corporation. However, at trial he conceded that there should be no legal distinction between himself and this corporation. Therefore, for purposes of this proceeding, the Incline Corporation is treated as synonymous with the debtor.

In Whitewood Forest subdivision the debtor purchased several lots on which he built homes, the last being on Lot 9. He contracted to sell this property to Mr. and Mrs. Michael Gorman.

The plaintiff, Teates, was the settlement attorney for the Gormans on Lot 9. On September 8, 1988, the debtor went to Teates' office to sign settlement documents required of him as the seller. Included in the documents executed by the debtor on that date was an affidavit (also known as a short form lien waiver) that included the following provision:

there has been no work done, services rendered or materials furnished in connection with repairs, improvements, development, construction, removal, alterations, demolition or such similar activity on or incident to the referred to property within Ninety (90) days prior to the date of this affidavit; and that there are no outstanding claims or persons entitled to any claim or right to a claim for mechanic's or materialmen's liens against said property....

Teates had also advised the debtor that a long form lien waiver was necessary for settlement. This document was to be signed by all material providers and subcontractors on the construction project as a certificate that they had been fully paid by the debtor. In Teates' office on September 8, 1988, debtor promised the attorney that the long form waiver would be returned shortly. However, this document was never furnished to Teates.

Teates had had prior dealings with the debtor and believed that the long form lien waiver signed by material suppliers and subcontractors on Lot 9 would be furnished as debtor promised. Because he was under a time constraint to close the sale, Teates proceeded to settlement on Lot 9 on Sep-

tember 9, 1988, without having received the completed long form lien waiver. He relied on the short form lien waiver, despite his knowledge of the recent construction of the home.

From the settlement, the debtor received net cash in the amount of $36,343.11. Of this sum, he remitted the amount of $10,000.00 to James E. Harris, an engineer, under the terms of an assignment dated July 25, 1988; this was a payment on an indebtedness for engineering work in Whitewood Forest subdivision. The balance of the debtor's sale proceeds, $26,343.11, was far short of the amount needed by him to pay outstanding charges for materials and labor on Lot 9. Moreover, the debtor used a portion of the proceeds to pay other obligations unrelated to Lot 9.

Subsequent to the settlement, four Lot 9 subcontractors filed memoranda of mechanics' liens against the property, and at least two proceedings to enforce have been brought. Although there were other unpaid claims against the property, only these two have the potential to become liens against the property. The purchasers, Mr. and Mrs. Gorman, had indicated to Teates their intention to hold him liable to the extent they may suffer damages as a result of unpaid claims against Lot 9.

### Discussion and Conclusions

Teates seeks a declaration of nondischargeability of any amount he may pay out as a result of the potential claim against him by the purchasers of property. On the day of trial, this court heard argument on the debtor's motion for summary judgment and then took Teates' evidence. This opinion constitutes findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

### The Debtor's Motion for Summary Judgment

Debtor argues in his motion for summary judgment that Teates has not suffered a loss and therefore cannot make a claim against the estate.[1] Under Virginia law, asserts the debtor, there is "no actual loss or damage" suffered by a party claiming indemnification or contribution until that person has actually made payment on a debt. *Allied Productions v. Duesterdick,* 217 Va. 763, 766, 232 S.E.2d 774, 776 (1977). The debtor's position is that until Teates pays a claim on Lot 9, he has suffered no loss and, therefore, cannot make a claim against debtor for non-dischargeability under § 523(a)(2)(B).

The question presented by the debtor's argument is whether the language of *Allied Productions* should control this court's dischargeability analysis. In *Allied Productions,* a default judgment had been entered against the plaintiff, who then sued his attorney for malpractice based on the judgment. In ruling that the plaintiff had not stated a cause of action under Virginia law, the Virginia Supreme Court relied on the fact that plaintiff had not paid the judgment.

■ In bankruptcy dischargeability litigation, results turn on federal bankruptcy law and not state law although relevant state law may be considered. *See Long v. West (In re Long),* 794 F.2d 928, 930 (4th Cir.1986); 3 King, *Collier on Bankruptcy,* par. 523.15[1], pp. 523–105—523–106 (15th Ed.1989) (concerning determination of dischargeability of obligations as alimony under § 523(a)(5)).

■ Section 523(a) enumerates certain "debts" excepted from discharge. The Bankruptcy Code defines the term "debt" as "liability on a claim." 11 U.S.C. § 101(11). Section 101 defines a "claim" as a:

---

**1.** Actually, counsel for the debtor has made the argument that the debtor must satisfy five elements to render a debt non-dischargeable under 11 U.S.C. § 523(a)(2), one of which is that the creditor must have sustained a "loss." The cases debtor cites as authority for this proposition are inapposite to this case, however, since they expressly deal with adversary proceedings brought under § 523(a)(2)(A). The present proceeding is brought under § 523(a)(2)(B). This court, nevertheless, will address the issue of loss since it presents a substantial issue of whether such a claim may be brought against the estate.

right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured ..."

11 U.S.C. § 101(4)(A). It is apparent from this that Congress intended a very broad definition of the term debt, and Teates cites to legislative history affirming this intent: "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt within the bankruptcy case." H.R.Rep. No. 595, 95th Cong., First Sess. 309 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6266.

Given the broad definition of the term "debt" in the bankruptcy context, it is irrelevant whether Teates has satisfied all the technical elements for a cause of action law for indemnity at state law. *See Grady v. A.H. Robbins, Co. Inc.*, 839 F.2d 198 (4th Cir.), *cert. denied*, 487 U.S. 1260, 109 S.Ct. 201, 101 L.Ed.2d 972 (1988). All that is necessary is that a "right to payment" may arise. It makes no difference that the claim is presently unmatured, contingent, or disputed.

This court, therefore, denies the debtor's motion for summary judgment.

*Trial of Plaintiff's Claim*

Having concluded that the bankruptcy code deals with the type of claim presented here, this court turns to the question of whether Teates' claim satisfies the requirements of § 523(a)(2)(B).

Section 523(a)(2)(B) provides in pertinent part:

A discharge under section 727,1141,-1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive ...

11 U.S.C. § 523(a)(2)(B).

 Five requirements must be satisfied in order to establish nondischargeability under § 523(a)(2)(B): 1) that the debt was obtained by the use of a statement in writing, 2) that it is materially false, 3) respecting the debtor's financial condition, 4) on which the creditor reasonably relied, and 5) that the debtor published with intent to deceive. *United Leasing Corp. v. Roop*, 48 B.R. 310 (E.D.Va.1985). The burden of proof is on the plaintiff to satisfy each of the five elements by a preponderance of the evidence. *See Coombs v. Richardson*, 838 F.2d 112, (4th Cir.1988); *Seery v. Basham (In re Basham)*, 106 B.R. 453 (Bankr. E.D.Va.1989).[2]

In this case, the parties stipulated that the debtor knew the proceeds of the sale would be insufficient to pay off all of the contractors' and materialmen's liens and that the debtor signed the affidavit for the purpose of inducing the Gormans to settle. These stipulations, combined with the facts set out above, convince the court that all elements necessary to nondischargeability under § 523(a)(2)(B) have been established with the exception of the Teates' reasonable reliance. Thus, the critical issue here is whether Teates reasonably relied on the debtor's lien waiver affidavit. If Teates cannot establish his reasonable reliance then he cannot succeed in this action notwithstanding the presence of the other four elements. *See Nationwide Financial Corp. v. Smith (In re Smith)*, 2 B.R. 276 (Bankr.E.D.Va.1980).

The requirement that the creditor's reliance be reasonable draws into question

---

**2.** As discussed in this court's opinion in *Basham,* 106 B.R. at 456, there is a split of authority on whether the appropriate standard of evidence in dischargeability fraud cases under § 523(a)(2) is preponderance or clear and convincing. A definitive ruling on this question

may soon be forthcoming since at the time this opinion is written the Supreme Court has this issue under consideration. *See Henson v. Garner (In re Garner)*, 881 F.2d 579 (8th Cir.1989), *cert. granted, Grogan v. Garner,* —— U.S. ——, 110 S.Ct. 1945, 109 L.Ed.2d 308 (1990).

whether the creditor should investigate the financial statement prior to relying on it. In *Sovran Bank, N.A. v. Allen (In re Allen)*, 65 B.R. 752 (E.D.Va.1986), *appeal dismissed sub nom. Sovran Bank, N.A. v. Allen*, 823 F.2d 548 (4th Cir.1987), the district court specifically rejected the imposition of a duty on a lender to investigate the financial statement, stating, "[t]his court must conclude, therefore, that Congress did not intend to include a verification requirement when it enacted section 523(a)(2)(B)(iii) of the Bankruptcy Code." *In re Allen*, 65 B.R. at 752.

■ The conclusion that a lender does not have the duty to verify, however, does not give the lender a right to ignore glaring inconsistencies or blatant falsehoods in the statement. Where a creditor has been put on notice of the statement's inaccuracy, its reliance on that statement is unreasonable. A creditor cannot ignore "red flags" and expect to benefit from nondischargeability. *See Beneficial New York Inc. v. Bossard (In re Bossard)*, 74 B.R. 730, 735 (Bankr.N.D.N.Y.1987). *See also Standard Federal Bank v. Compton (In re Compton)*, 97 B.R. 970, 979 (Bankr.N.D.Ind. 1989); *Beneficial Finance Co. v. Jackson (In re Jackson)*, 32 B.R. 549, 552 (Bankr.E. D.Va.1983).

■ Accepting that Teates relied on the debtor's short form waiver, this court is not persuaded that his reliance was reasonable. Teates was the closing attorney in the sale of a newly constructed residence, yet the waiver form stated that no construction had been performed within the previous 90 days. Teates knew this provision to be inaccurate, and still he proceeded to closing. His own knowledge of the falsity precludes his ability to claim that reliance on the waiver was reasonable. *See United States v. Sandman (In re Sandman)*, 68 B.R. 784, 786 (Bankr.D.Mont. 1987); *Beneficial Finance Company v. Jackson (In re Jackson)*, 32 B.R. 549; *Nationwide Financial Corp. v. Dawson*, 16 B.R. 70, 71 (Bankr.E.D.Va.1981).

Since Teates has not established reasonable reliance on the short form waiver, this court must rule in favor of the debtor on the issue of dischargeability under § 523(a)(2)(B).

*Plaintiff's Motion for Sanctions*

In addition to the the debtor's motion for summary judgment and the Teates' trial of its complaint, the court has before it the Teates' motion for sanctions for failure to comply with discovery order. Teates' motion requests default judgment against the debtor and an award of reasonable attorney fees and costs, or an order designating certain facts against the debtor and reasonable attorney fees and costs.

On October 20, 1989, this court entered an order compelling the debtor to produce certain invoices and to provide answers to certain interrogatories. It appears from the memoranda supplied by the parties that the debtor failed to make the invoices available to Teates, who then was forced to obtain the information elswhere.

Bankruptcy Rule 7037 incorporates Rule 37 of the Federal Rules of Civil Procedure. Rule 37(b)(2) permits the court among other things to order such relief as default judgment or designation facts as established. Fed.R.Civ.P. 37(b)(2). That subsection also compels the court to require the party failing to obey the order to pay the reasonable expenses, including attorney's fees, caused by the failure, either in lieu of or in addition to that relief. The provision makes exception where the court finds the failure to be "substantially justified or that other circumstances make an award of expenses unjust." *Id.*

■ After reviewing the arguments supplied by the parties this court finds that the debtor failed substantially to comply with the order compelling discovery. The debtor claimed that the invoices were in storage in Warrenton, Virginia. The debtor's counsel asserted that the debtor was in North Carolina at the time, that the debtor was unemployed and living out of a car, and that the debtor "was not of the mindset to consider placing a collect call to inform counsel of his changed circumstances." It is apparent that the debtor made little effort, if any, to make available the necessary documents despite the order of the

court to do so. As a result, Teates incurred substantial attorney's fees and costs caused by the debtor's failure to comply. This court does not find the debtor's failure to comply with discovery was substantially justified or that an award of expenses would be unjust.

Pursuant to Bankruptcy Rule 7037 and Federal Rule of Civil Procedure 37, this court grants Teates' motion for sanctions to the extent of awarding reasonable costs, including attorney's fees, caused by the debtor's failure to comply with discovery. To the extent that the motion requests designation of facts or default judgment, the motion is denied. Also, to the extent that the motion requests fees incurred in establishing that the debtor was the alter ego of Incline Corporation, which was later stipulated to by the debtor, the motion is denied.

The court will enter an appropriate order.

## ORDER

For the reasons expressed in the Memorandum Opinion entered simultaneously with this order,

IT IS ORDERED (1) that the debtor's motion for summary judgment is denied; (2) that judgment in this adversary proceeding is entered for the debtor; and (3) that plaintiff's motion for sanctions against the debtor for his failure to comply with discovery order is granted to the extent that it requests reasonable costs, including attorney's fees, caused solely by the debtor's failure to comply with the discovery order. The motion for sanctions is denied to the extent that it requests reasonable costs incurred in establishing that the debtor was the alter ego of Incline Corporation and is also denied to the extent that it requests default judgment or an order designating facts as established.

The plaintiff shall submit to the court within 30 days from the entry of this order a schedule of fees and costs awarded for

review by this court in accordance with this order.