**In re Harry SANDLER, Debtor.**

**Calvin ZEDD and Peggy Zedd, Plaintiffs,**

**v.**

**Harry SANDLER, Defendant.**

**Bankruptcy No. 90–22632–B.**

**Adv. No. 91–2237–B.**

United States Bankruptcy Court, E.D. Virginia, Norfolk Division.

July 9, 1992.

Carolyn L. Camardo, Marcus, Santoro & Kozak, Portsmouth, Va., for plaintiffs.

John L. Smith, Jr., Outland, Gray, O'Keefe & Hubbard, Chesapeake, Va., for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court upon the filing of a complaint by Calvin Zedd and Peggy Zedd (the "Zedds") to determine the dischargeability of a debt pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B) and (a)(6). Said complaint was filed on September 4, 1991 and an answer thereto was filed by Harry Sandler on December 9, 1991.

Upon consideration of the arguments of counsel and the evidence presented at trial on March 27, 1992, as well as the briefs of counsel filed thereafter, the Court makes the following findings of facts and conclusions of law.

**68**

## FINDINGS OF FACT

It appears to the Court that Mr. Zedd and Mr. Sandler were previously associated as partners in a number of business ventures, one of which is more particularly known as S–Z Associates. It further appears to the Court that the restructuring of the S–Z Associates partnership and the acts of the parties related thereto are the subject of the controversy presently before the Court.

On May 28, 1987, the Zedds and Mr. Sandler entered into an agreement (the "settlement agreement") which purported to settle a number of differences that had arisen between the parties as a result of the operation of the various business entities owned by S–Z Associates. The settlement agreement between Mr. Sandler and Mr. Zedd, together with entities which they controlled, constituted a restructuring of the relationship between the parties, as established in the February 20, 1986, partnership agreement which formed S–Z Associates. The settlement agreement purported to divide the assets of the partnership and rewrite the partnership agreement. According to the settlement agreement, Mr. Sandler was to receive, and in fact did receive, new and used furniture inventory resulting from the transfer of corporate assets. Mr. Sandler was to receive all outstanding stock in the various corporate entities, except for Auto Auction, the ownership of which was to remain with Mr. Zedd. The settlement agreement also provided that, with certain exceptions, Mr. Sandler and Mr. Zedd were to be equal owners of the corporate real estate used or owned by the corporate signatories to the settlement agreement. Although Mr. Sandler and Mr. Zedd testified that they were attempting to dissolve their business relationship, Mr. Sandler and Mr. Zedd were to remain equal partners in S–Z Associates, which was to continue as a going concern. The transfer of title to the real estate owned by the various entities was to be by deed, delivered in escrow pending conclusion of future events. The Court has not been apprised of the status of the titles to the real estate, nor whether the parties have complied with the conditions of the settlement agreement.

The settlement agreement called for payments in the amount of $93,138.69, to be made by Mr. Sandler to the Zedds, upon the substantiation by the Zedds of certain expenditures. It appears to the Court that Mr. Sandler was to indemnify the Zedds for expenditures which the Zedds incurred in connection with the liabilities of the various businesses. An additional condition of the settlement agreement was that the Zedds dismiss a lawsuit for an accounting pending against Mr. Sandler.

Connie Sandler's name appears on the settlement agreement although her testimony at trial, which this Court finds to be credible, was that the signature above her name was not her own, nor had she authorized its use on the agreement. It appears to the Court that there is insufficient evidence to conclude that Mr. Sandler forged his wife's name; however, the Court does find that Mr. Sandler was aware that the signature on the settlement agreement was not that of his wife, and the Court further finds that the settlement agreement was presented by Mr. Sandler, to the Zedds, as being endorsed by Mrs. Sandler.

The plaintiffs allege that Mr. Sandler's actions are sufficient grounds to find any debt arising from the settlement agreement to be nondischargeable. The complaint requests that a judgment of $1,986,050.47 be entered against Mr. Sandler, and that said judgment be found nondischargeable.

Mr. Sandler filed a voluntary Chapter 11 case on May 31, 1990 which was subsequently converted to a Chapter 7 case on April 22, 1991. Mr. and Mrs. Zedd have filed and presently remain in a Chapter 11 case.

## CONCLUSIONS OF LAW

In a complaint brought to determine the dischargeability of a debt pursuant to 11 U.S.C. §§ 523(a)(2) or (a)(6) the plaintiff carries the burden of proof and the standard of proof to be used to determine dischargeability is the ordinary preponderance of the evidence standard. *Grogan v. Gar-*

*ner*, —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

The plaintiffs seek relief pursuant to 11 U.S.C. § 523(a)(2)(B) which states in pertinent part that a debt is not discharged if it was incurred in an exchange for—

(2) money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(B) use of a statement in writing—

(i) that is materially false

(ii) respecting the debtor's or an insider's financial condition

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied and

(iv) that the debtor caused to be made or published with an intent to deceive.

■ As the elements of § 523(a)(2)(B) are stated in the conjunctive, and not in the alternative, it is the burden of the plaintiff to prove the existence of each element. There is no evidence before the Court of a written financial statement reflecting the financial condition of Mr. or Mrs. Sandler. The only document admitted into evidence is the settlement agreement which in no way reflects the financial position of Mr. or Mrs. Sandler. The Court therefore finds that the Zedd's have failed to meet their burden of persuasion regarding the existence of such a written financial statement and consequently the court need not address the remaining elements required under § 523(a)(2)(B).

For the Court to find a debt to be nondischargeable pursuant to 11 U.S.C. § 523(a)(6), the plaintiffs must prove:

(1) an injury to the plaintiffs or their property;

(2) that such an injury was the result of an act of the debtor;

(3) that said act was willful; and

(4) that said act was malicious.[1]

■ Section 523(a)(6) is sufficiently broad to encompass any injury that was willful and malicious. *In re Criswell*, 52 B.R. 184, 203 (E.D.Va.1985). While the Court finds that Mr. Sandler did in fact know the signature on the settlement agreement was not that of his wife, and that he presented the document to the Zedds without disclosing the forgery, the Court has no evidence before it from which it can find the existence of an injury to the plaintiffs or the property of the plaintiffs. Although the settlement agreement is illusory at best, the allegations of injury pursuant to the settlement agreement are unsupported. It appears to the Court that no new liabilities were incurred by the plaintiffs under the settlement agreement. There has been no assertion of injury ·to the Zedds, nor has the evidence before the Court convinced it that Mr. Sandler has damaged, destroyed, or disposed of property of the Zedds in a manner proscribed by 11 U.S.C. § 523(a)(6). The property Mr. Sandler disposed of was, according to the evidence, property he acquired as a result of the agreement. This is not to say that Mr. Sandler's conduct may be excusable, for if he engaged in fraud or false pretenses those issues arise under 11 U.S.C. § 523(a)(2)(A), as hereinafter discussed.

The Court therefore finds that the plaintiffs have failed to prove the existence of an injury to the Zedds or their property. The Court makes no determination regarding the willfulness or maliciousness of Mr. Sandler's acts.

■ The Zedds' final allegation is that any debt owing by Mr. Sandler under the terms of the settlement agreement would be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).[2] A debt will be found to be

---

**1.** 11 U.S.C. § 523(a)(6) (in pertinent part)
Exceptions to discharge
(a) A discharge under § 727 or 1141 of this title does not discharge an individual debtor from any debt—
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

**2.** 11 U.S.C. § 523(a)(2)(A) (in pertinent part)
Exceptions to Discharge
(a) ... does not discharge an individual debtor from any debt—
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

nondischargeable for actual fraud or false pretenses pursuant to 11 U.S.C. § 523(a)(2)(A), if the plaintiffs prove that:

(1) the debtor made the misrepresentations;

(2) the debtor knew said representations were false at the time they were made;

(3) said representations were made with the intention and purpose of deceiving the creditor;

(4) the creditor relied on such representations; and

(5) the creditor sustained the alleged loss and damage as a result of the representations having been made.

*In re Taylor,* 62 B.R. 846, 850 (E.D.Va. 1986); *In re Criswell,* 52 B.R. 184, 196 (E.D.Va.1985); *In re Hazelwood,* 43 B.R. 208, 211 (E.D.Va.1984).

Mrs. Sandler's testimony at trial, which this Court finds to be credible, was that her signature did not appear on the settlement agreement. It appears to the Court, from the evidence presented at trial, that Mr. Sandler was aware that his wife had not signed the settlement agreement, yet he represented said signature as being authentic during the consummation of the settlement agreement with the Zedds. It was Mr. Zedd's testimony at trial that he was aware that Mr. Sandler was beginning to experience financial difficulties, although he understood Mrs. Sandler possessed substantial personal assets. Mr. Zedd further testified that his intent was for Mrs. Sandler to be a party to the settlement agreement, in order to ensure his indemnification by means of her personal assets. Mr. Zedd also testified that he did not think that he would have endorsed the settlement agreement without Mrs. Sandler being a party thereto, although this statement is qualified by his previous testimony that "I wanted out of this mess."

For the aforementioned reasons, the Court finds that Mr. Sandler knowingly made false representations to the Zedds and said representations were made with the intention of inducing the Zedds into endorsing the settlement agreement. This Court will assume without deciding that there was reliance on the forgery by the Zedds and that there were no extenuating circumstances related to the settlement upon which Mr. Sandler could prevail.

Proceeding under that assumption, the Court cannot find on the ultimate issue of damages. Even assuming reliance, from the facts before the Court, the Court is unable to determine the amount, if any, of such damages.

Although the Court finds that the conduct of Mr. Sandler may rise to the level of actual fraud, it appears to the Court that Mr. Zedd was also misleading in his dealings with Mr. Sandler. Viewing the evidence in its entirety, the Court is left with an impression of duplicitousness, by both Mr. Sandler and Mr. Zedd.[3]

Despite the conduct of Mr. Sandler and Mr. Zedd, this Court may well find that the plaintiffs have met their burden of proving fraudulent conduct on the part of Mr. Sandler, although the plaintiffs fail on the issue of damages. The plaintiffs are required to present evidence of the measure of damages resulting from the alleged wrongful act of the debtor. *In re Caranna,* 963 F.2d 382 (10th Cir.1992) (Request for rehearing on issue of damages denied).

From the evidence presented to the Court, it appears that part of the consideration to be given by the plaintiffs, pursuant to the settlement agreement, was the dismissal of a pending lawsuit against Mr. Sandler. It appears to the Court that said suit was dismissed, although the only record which the Court has of the dismissal is the colloquy of counsel during an objec-

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

3. Mr. Sandler was to receive from Mr. Zedd new and used furniture inventory as part of the settlement. It was the unrebutted testimony of Mr. Sandler that the furniture received was neither of the quantity nor quality that had been represented by Mr. Zedd. While the conduct of Mr. Zedd does not rise to the same level of offensiveness as that of Mr. Sandler, such conduct does lead the Court to question the veracity of the events as conveyed by the parties.

tion to the evidentiary propriety of Mr. Zedd's answers to interrogatories.

This Court is without further knowledge of the performance of the parties to the agreement. Furthermore, the Court is without evidence which would indicate that the Zedds have repaid obligations, for which they could seek indemnification from Mr. Sandler, according to the terms of the settlement agreement. Mere allegations in a complaint of liability or loss, without evidentiary proof, is not sufficient for this Court to make a finding that there were in fact damages, and to place a dollar amount on such damages would be pure speculation. The Court therefore finds that the lack of any evidence of probative value showing what loss, if any, has been sustained by the Zedds, and there being only mere allegations that the Zedds have been called upon to honor their guarantees which Mr. Sandler had agreed to indemnify them against, with nothing more, precludes this Court from entering judgement on the evidence. The plaintiffs have argued that they should be afforded the right to an additional trial on the damages sustained by them. The measure of damages was asserted in this trial, and they are required to present evidence on the issue of damages to show their loss. Damages are an essential requirement of the dischargeability issue in 11 U.S.C. § 523(a)(2)(A). *Taylor*, 62 B.R. 846; *Criswell*, 52 B.R. 184; *Hazelwood*, 43 B.R. 208. Absent such credible evidence, the case should be dismissed.[4] See *Huser*, U.S.App. LEXIS 11121.

For the reasons previously stated, this Court finds that the debt owed by Mr. Sandler to the Zedds be discharged in bankruptcy and the complaint should be dismissed.

An appropriate order will be entered in accordance with this opinion.

---

**4.** The burden upon this Court is compounded by a lack of testimony, with respect to the conduct of the parties, in regards to the amount of any injury. It is a clear and obvious duty to prove such issues by a preponderance of the evidence and it is the lack thereof that compels this Court to reach its conclusion.