In re Everette ABDUL'FARUQ and Shawna Abdul'Faruq, Debtors.

AVCO FINANCIAL SERVICES, INC., Plaintiff,

v.

Everette ABDUL'FARUQ and Shawna Abdul'Faruq, Defendants.

Bankruptcy No. 93–34123–S.
Adv. No. 93–3176–S.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Dec. 8, 1994.

---

Edward S. Whitlock, III, Stuart A. Simon & Associates, Richmond, VA, for plaintiff.

John K. Dixon, III, Richmond, VA, for defendants.

### MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court on the complaint of AVCO Financial Services, Inc. ("AVCO") for determination of the dischargeability of a debt owed to it by Everette Abdul'Faruq and Shawna Abdul'Faruq (the "Abdul'Faruqs") pursuant to 11 U.S.C. § 523(a)(2)(B). This is a core proceeding, over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(I) and 1334. Venue is proper pursuant to 28 U.S.C. § 1409. Upon consideration of the evidence and arguments presented at the August 4, 1994 hearing, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The Abdul'Faruqs have a rather detailed history of borrowing from AVCO. Submitted into evidence were loan documents for the years 1991 through 1993. In March of 1991, the Abdul'Faruqs borrowed $1,137.45, at a monthly payment of approximately $64.00. (Pl.'s Ex. D.) In May of 1991, AVCO refinanced the March 1991 loan and lent the Abdul'Faruqs $3,499.94, from which it advanced additional funds of $2,157.92 in cash, $229.42 for credit life insurance, and $10.00 for public officials. This loan yielded a monthly payment of approximately $139.00 per month. (Pl.'s Ex. C.) In December of 1991, the Abdul'Faruqs returned to AVCO for an additional advance. AVCO refinanced the prior loan balance, which had been paid down to $3,041.38, advanced the Abdul'Faruqs $296.13 in cash, and included $162.04 for credit life insurance. (Pl.'s Ex. B.) The total amount financed was $3,499.55 at an approximate monthly payment of $139.00 per month.

On May 13, 1993, AVCO lent the debtors $3,499.71. This loan amount included a refinance of the Abdul'Faruqs' prior AVCO obligation, then in the amount of $2,460.58, a new advance to the Abdul'Faruqs in the amount of $761.57 in cash, $271.56 for credit life insurance, and $6.00 to public officials. (Pl.'s Ex. A.) As a result of a slightly lower interest rate, the loan payments were now approximately $137.00 per month. While the prior loans were secured by various household items, this loan was secured by the Abdul'Faruqs' 1983 automobile. (Pl.'s Ex. A; Pl.'s Ex. K.)

The effect of AVCO's lending practice closely mirrors that of a revolving credit account, in which continuing advances may be made up to a certain dollar amount. As the borrowers make payments towards the obligation, additional advances may be made to bring the obligation back up to the original amount. In this case, the amount for the Abdul'Faruqs never exceeded $3,500.00, and the regular monthly payment to AVCO was always less than $140.00. Unlike an open

revolving account, which could be accessed at any time by check or credit card, AVCO requires a new credit application with each new advance. The advantage to be gained by using a series of installment loans and credit applications as opposed to a revolving account is that the lender has an opportunity to detect changes in the borrowers' financial situation before advancing additional funds.

It is the credit application submitted by the Abdul'Faruqs in obtaining the loan on May 13, 1993 that gives rise to AVCO's complaint. AVCO points to a form signed by the debtors at the time of the application. That form contains a list of debts and states "We owe no other debts." (Pl.'s Ex. E.) Omitted from this list, and from the credit application itself, is a debt or debts to the Richmond Transit Credit Union ("RTCU") in excess of $8,000.00. Payments on the omitted debt were $50.00 per week, or $216.67 per month.[1] The RTCU obligation was also omitted on the same form during the December 1991 loan application. (Pl.'s Ex. F.) Both the application and the form are written statements respecting the debtor's financial condition.

By AVCO's internal policies, information contained in each credit application is verified through the examination of the borrowers' pay stubs and credit report. AVCO personnel testified that the debt information provided by the Abdul'Faruqs in the application process was verified by comparing it with the debtors' credit report. The credit union debt was not disclosed in that credit report. AVCO asserts that it would not have made the loan had it known of the RTCU debt.

The debtors deny having withheld information about the RTCU debt from AVCO. Instead, the Abdul'Faruqs state that at the time of the 1991 and 1993 applications, they disclosed the RTCU indebtedness to AVCO employees, and were told that payroll deducted loans need not be reflected in the list of debts. As evidence of AVCO's awareness of the RTCU debts, the Abdul'Faruqs point

to Mr. Abdul'Faruq's pay stubs, given to AVCO as part of the loan application process. Both the stub submitted in 1991 and the stub submitted in 1993 contain a notation of an automatic debit. According to the legend on the back of Mr. Abdul'Faruq's pay stubs, the code number adjacent to the automatic debit amount indicates that the payment is going to a credit union. AVCO states that it would not have investigated the credit union deduction, as it uses pay stubs solely for the purpose of verifying gross income rather than net income.

The AVCO credit application lists the Abdul'Faruqs' debts in both "disclosed" amounts and "actual" amounts. (Pl.'s Ex. I.) The amounts differ, and appear to reflect AVCO's verification process, in which the borrowers list estimated amounts, and through the credit report actual amounts are determined. According to the application, the "actual" monthly obligations of the Abdul'Faruqs for payments owed on installment and revolving accounts, including the AVCO loan, total $521.00. In addition, the Abdul'Faruqs disclosed a $561.00 monthly mortgage payment. The total of the monthly obligations, as found on the AVCO application, was $1,082.00. Had the Abdul'Faruqs included the RTCU obligation, this total would have been $1,298.67.

The monthly income recorded on the AVCO credit application for Mr. Abdul'Faruq was $2,300.00, and Mrs. Abdul'Faruq's income was disclosed as $1,700.00. The total gross income was listed as $4,000.00 per month. The pay stubs given by the Abdul'Faruqs for verification during the application process, and submitted into evidence by AVCO, reveal different amounts. His pay stub reveals a weekly gross pay amount of $550.30, and her stub shows a biweekly gross pay amount of $652.38. (Pl.'s Ex. G.) The correct monthly amounts, as calculated from the pay stubs, are $2,384.63 for Mr. Abdul'Faruq and $1,413.49 for Mrs. Abdul'Faruq.[2] The correct total gross monthly in-

---

1. The monthly figure can be calculated by multiplying the weekly amount by 52, the number of weeks in a year, and dividing the result by 12, the number of months in a year. Thus, $50.00

multiplied by 52 equals $2,600.00, and $2,600.00 divided by 12 equals $216.67.

2. The monthly amounts are calculated as follows: in the case of the weekly pay amount, the gross

come at the time of the application was $3,798.12.

AVCO employees testified that they utilized gross income to determine the borrowers' capacity ratio ("AVCO Ratio"), The AVCO Ratio, which determined whether the Abdul'Faruqs met AVCO's lending criteria, was calculated using the following formula:

$$\frac{\text{Gross Monthly Income—Monthly Debts}}{\text{Gross Monthly Income}} = \text{AVCO Ratio}$$

By testimony of AVCO personnel, the loan to the Abdul'Faruqs would have been made as long as the ratio was 55% or higher.[3]

Conflicting testimony was given by AVCO employees as to whether the ratio had been calculated after inclusion of the RTCU obligation in order to determine whether the loan would have been made even if AVCO had known of the omitted debt. One employee testified that he would have wanted to know about the RTCU debt at the time of the application, and that he would have recalculated the AVCO Ratio to determine the effect of the RTCU payment, which he estimated to be between $200.00 and $260.00. Another employee stated that had he become aware of the RTCU debt at the time of the application, he would have recalculated the correct ratio. As the ratio would have been "different," he would have taken the application to his supervisor for approval. A third AVCO employee testified that he had not calculated the ratio including the omitted debt because he did not know the amount of the RTCU monthly payment. However, he estimated that the ratio probably would have been around 59% without the RTCU debt and around 51% with the RTCU debt. He also stated that he thought the Abdul'Faruqs would have qualified had the RTCU payment been $150.00 or less. The employee could not state with certainty that an obligation in the amount of the RTCU debt would have brought the ratio below 55%. This Court finds this testimony inconclusive at best as to whether the ratio was ever calculated to include the RTCU debt, and reluctantly makes its own calculations based upon the materials put into evidence.

When the corrected income from the Abdul'Faruqs' pay stubs and the monthly debt amounts, including the RTCU obligation, are inserted into the formula, the following result is obtained:

$$\frac{\$3,798.12 - \$1,298.67}{\$3,798.12} = \frac{\$2,499.45}{\$3,798.12} = .6581$$

If the RTCU obligation is excluded, the ratio yields a higher result:

$$\frac{\$3,798.12 - \$1,082.00}{\$3,798.12} = \frac{\$2,716.12}{\$3,798.12} = .7151$$

In addition, the ratios obtained would have been even higher had the incorrect income amounts from the application been used.

AVCO personnel testified that had they been apprised of the RTCU obligation, the AVCO Ratio would have been calculated to determine whether the ratio exceeded 55% and the loan would have been made to the Abdul'Faruqs as long as the ratio was 55% or higher. This Court finds that the Abdul'Faruqs' AVCO Ratio at the time of the application was 65.81%, despite inclusion of the RTCU obligation and using the correct gross income amounts from the Abdul'Faruqs' pay stubs.

### CONCLUSIONS OF LAW

▓▓▓▓ The Bankruptcy Code provides debtors a fresh start through a discharge of

---

amount is multiplied by 52, and the total divided by 12; in the case of the biweekly pay amount, the gross amount is multiplied by 26, and the total divided by 12.

**3.** The AVCO formula has the effect of yielding a higher number as the monthly debts decrease. For example, if a borrower's monthly gross income were $1000.00, and her monthly debts, including the new loan payment, were $600.00, the AVCO Ratio would be 40%, and the loan would not be made. If, in the same example, the monthly outlay were $400.00, the AVCO Ratio would be 60%, and the borrower would qualify.

all debts that arose before the date of the order for relief, except for those debts excepted from discharge by 11 U.S.C. § 523. *See* 11 U.S.C.A. § 727(b) (West 1993). Among the debts excepted from discharge in 11 U.S.C. § 523 are those:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> > (B) use of a statement in writing—
> >
> > > (i) that is materially false;
> > >
> > > (ii) respecting the debtor's or an insider's financial condition;
> > >
> > > (iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and
> > >
> > > (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C.A. § 523(a)(2)(B) (West 1993). In a suit to determine the dischargeability of a debt, the plaintiff has the burden of proof and must, by the preponderance of the evidence, prove that the debtor's particular obligation falls under one of the statutory exceptions of § 523. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). As the elements of § 523(a)(2)(B) are stated in the conjunctive, the burden is upon on the plaintiff to prove each element. *Zedd v. Sandler (In re Sandler)*, 143 B.R. 67, 69 (Bankr.E.D.Va.1992). Therefore, if any one of the elements are not proved by a preponderance of the evidence, AVCO's complaint will fail.

The credit application at issue was a written statement respecting the debtors' financial condition. The requirements that the statement was materially false, and that AVCO must have reasonably relied on the statement of indebtedness are the elements this Court will first focus upon the instant case.

■ A materially false statement presents a "substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *I.H. Mississippi Valley Credit Union v. O'Conner (In re O'Conner)*, 149 B.R. 802, 807 (Bankr.E.D.Va. 1993) (quoting *Jordan v. Southeast National*

*Bank (In re Jordan)*, 927 F.2d 221, 224 (5th Cir.1991)). Here, the omitted RTCU debt was of the type of information AVCO would have used in making its lending decision. AVCO utilizes gross income and monthly expenditures to determine its capacity ratio. The $216.67 monthly payment omitted by the Abdul'Faruqs would have lowered that ratio.

■ The relevant inquiry in determining materiality, however, is whether the creditor would have made the loan had it known the debtor's true financial condition. *In re O'Conner*, 149 B.R. at 807. Here, AVCO would have made the loan as long as the AVCO Ratio exceeded 55%. AVCO has not sufficiently demonstrated that the credit would not have been extended had it known of the RTCU obligation. In light of inconclusive testimony at trial as to whether the calculations of the AVCO Ratio had been made after including the RTCU obligation, this Court has examined the exhibits proffered by AVCO and calculated the capacity ratio. The AVCO Ratio would have been 65.81% had the RTCU debt been included. Therefore, by AVCO's own evidence, the Abdul'Faruqs would have qualified for the loan even if they had disclosed the RTCU debt. Given AVCO's self-imposed lending standards, under which the loan would have been made, the omission of the RTCU obligation was not material.

■ While failure to prove any one element of § 523(a)(2)(B) is fatal to AVCO's case, the Court next examines whether there was reasonable reliance. To establish reasonable reliance, AVCO must show that its reliance on the statement was objectively reasonable, and that there was actual reliance on the statement. *In re O'Conner*, 149 B.R. at 809–810. While actual reliance is to be determined on a case-by-case basis, a mere glance at a financial statement does not suffice for actual reliance. *Id.*

■ This Court has held that it is not reasonable for a creditor to claim it relied upon a financial statement it knew was inaccurate. *See Beneficial Finance Co. v. Jackson (In re Jackson)*, 32 B.R. 549 (Bankr. E.D.Va.1983) (A creditor may not claim to rely upon a portion of a financial statement

when it is charged with the knowledge of falsity of the statement). AVCO claims it relied upon the credit application, but this Court finds that the application contains errors with regard to the income of the Abdul'Faruqs. The pay stubs submitted by the Abdul'Faruqs were given to AVCO for verification of the gross income amounts. The amounts on the stubs do not match the amounts found on the application. When AVCO reviewed those pay stubs, even if, as its employees testified, it did so solely for purposes of verifying gross income while ignoring deductions, it became charged with knowledge of the falsity of the application.

In addition, other courts have held that if a creditor has knowledge of a debt through some other source, it cannot reasonably rely on the debtor's written statement that excludes that debt. *See First Security Bank of Fox Valley v. Ardelean (In re Ardelean)*, 28 B.R. 299, 301 (Bankr.N.D.Ill.1983) (Reliance is unreasonable when the creditor knew from the onset that the financial statement was inaccurate); *United States v. Sandman (In re Sandman)*, 68 B.R. 784, 786 (Bankr. D.Mont.1987) (There can be no reasonable reliance when the creditor knows the information is not accurate). The other source of information in this case is the notation on Mr. Abdul'Faruq's pay stub.

▮▮▮ While AVCO does not have an obligation to investigate or verify every aspect of a credit application before relying on it, "the conclusion that a lender does not have a duty to verify, however, does not give the lender a right to ignore glaring inconsistencies or blatant falsehoods in the statement." *Teates v. Kuranda (In re Kuranda)*, 122 B.R. 264, 269 (Bankr.E.D.Va.1990). The difference between the income amounts found on the Abdul'Faruqs' application and the income amounts found on the pay stubs is a glaring inconsistency that should not have been ignored by AVCO.[4] As for the payroll deducted credit union payments, as disclosed in the pay stub of Mr. Abdul'Faruq, "a creditor cannot ignore 'red flags' and expect to bene-

fit from nondischargeability." *Id.* at 269. Here, anything more than a casual glance at the documents submitted Abdul'Faruqs in support of their credit application should have raised such a flag. While the credit union debit amount could have been for a savings account, a retirement account, or a loan payment, the existence of the deduction should have prompted further inquiry of the borrower. AVCO's claimed reliance is not reasonable, given its knowledge of the falsity of the credit application and debt form, and its failure to review the pay stubs.

This Court has weighed conflicting testimony as to whether AVCO was made aware of the RTCU debt during the application process. On one hand, AVCO states that it had no knowledge of the RTCU obligation, and that had it known, the obligation would have been included when calculating the AVCO Ratio. On the other hand, the Abdul'Faruqs state that they disclosed the RTCU debt to AVCO, and were instructed not to list the obligation because it was payroll deducted. The pay stubs submitted with the application reveal the credit union debit, and bolster the testimony of the Abdul'Faruqs that the loan was disclosed. The Court is not inclined to disbelieve either party's version of oral statements made during the application process, but holds only that AVCO has failed to show that its version is more likely true than that of the Abdul'Faruqs.

The document AVCO pinned its hopes on in this case is a boilerplate form that appears to have been designed with a future dischargeability action in mind. Submitting a form signed by the debtors that essentially says "AVCO relies on this written statement that there are no other debts" begs the question as to whether AVCO's reliance was objectively reasonable and whether the statement was actually relied upon. Despite such self-serving boilerplate, it is this Court's responsibility to determine the nature and extent of a creditor's reliance in each case.

---

4. In determining that the inconsistency was a "glaring" one, the Court considered that the application only overstated actual income by $201.88 per month. This amount, however, nearly would have paid the $216.67 monthly obligation on the RTCU loan. In addition, the inconsistency is particularly prominent given AVCO's use of monthly gross income and monthly debt payments in its capacity calculation.

AVCO has failed to show that the loan would not have been made had the RTCU debt been disclosed and, therefore, that the omission was material. AVCO has also failed to show by a preponderance of the evidence that it reasonably relied upon the Abdul'Faruqs' written credit application. Failure to carry the burden on either of these elements is fatal to AVCO's case. As a result, the Court need not reach the intent element of § 523(a)(2)(B). For the foregoing reasons, the Abdul'Faruqs' debt to AVCO is held to be dischargeable.

The Court will enter an order in accordance with its Memorandum Opinion.