In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3800

In re:

Hewlett E. Morris, Jr.,
a/k/a H. Edward Morris,

Debtor-Appellee.


Appeal of:  Shaw Steel, Inc.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 2327--Elaine Bucklo, Judge.


Argued May 31, 2000--Decided August 11, 2000


Before Flaum, Chief Judge, and Bauer and
Harlington Wood, Jr., Circuit Judges.

Flaum, Chief Judge.  Plaintiff Shaw Steel, Inc.
appeals the district court's decision affirming
a bankruptcy court's determination that defendant
Hewlett E. Morris, Jr.'s (a/k/a H. Edward Morris)
debt to Shaw Steel was not exempt from discharge
under 11 U.S.C. sec. 523(a)(2)(B) of the United
States Bankruptcy Code. For the reasons stated
herein, we affirm the decision of the district
court.

I.  Background

In 1993, Shaw Steel filed suit in the United
States District Court for the Northern District
of Ohio against O.L. Anderson Co. and defendant
Morris, the Chairman of the Board and Chief
Executive Officer of O.L. Anderson. In its
complaint, Shaw Steel alleged that O.L. Anderson
owed it money for materials that Shaw Steel had
previously shipped to O.L. Anderson. Shaw Steel
also alleged that Morris, in his capacity as a
corporate officer for the company, had
fraudulently induced Shaw Steel to extend credit
to O.L. Anderson for the purchase of those
materials.

On September 1, 1993, the United States
District Court for the Northern District of Ohio

entered judgment in favor of Shaw Steel and against O.L. Anderson in the amount of $215,836.69 plus 10% interest on that amount from November 17, 1992. At the time this judgment was entered, Shaw Steel's complaint against Morris was dismissed without prejudice. Subsequent to the entry of judgment in favor of Shaw Steel, and prior to the satisfaction of O.L. Anderson's judgment debt to Shaw Steel, O.L. Anderson was dissolved without any money being paid to Shaw Steel.

When O.L. Anderson was dissolved prior to the payment of its judgment debt to Shaw Steel, Shaw Steel again filed suit against Morris in the United States District Court for the Northern District of Ohio alleging the same fraud that was the subject of its first complaint. On July 26, 1994, Shaw Steel signed a stipulated entry dismissing its case against Morris with prejudice and, on August 22, 1994, Shaw Steel and Morris executed a "Settlement Agreement and Mutual General Release" ("Settlement Agreement" or "Agreement"). This Agreement provided for the payment of $35,000 by Morris to Shaw Steel, and it contained a variety of representations as to Morris's financial condition./1 The Agreement also incorporated an Affidavit of Financial Condition previously given by Morris to MNC Financial Group, a major lender to O.L. Anderson. As part of the Settlement Agreement, Morris consented to Shaw Steel's investigation of the representations he made in that Agreement.

Under the terms of the Settlement Agreement, Shaw Steel had the right to challenge the statements made by Morris in the Settlement Agreement as to his financial condition by commencing an arbitration proceeding. If Shaw Steel decided to commence such a proceeding, the sole issue to be arbitrated was the material accuracy of Morris's representations. The Settlement Agreement also provided that if the arbitration terminated in Shaw Steel's favor, a previously-agreed consent judgment in the amount of $215,000 could be filed in the United States District Court for the Northern District of Ohio.

On July 13, 1995, Shaw Steel commenced arbitration proceedings pursuant to the Settlement Agreement after an investigation led it to believe that Morris's statements as to his financial condition were false. Morris then filed suit in Michigan state court seeking to enjoin Shaw Steel from proceeding with the arbitration. This state court action was removed to federal district court and, after summary judgment was granted to Shaw Steel, the arbitration continued. On April 16, 1997, an arbitration panel ruled in Shaw Steel's favor, finding that there were

material inaccuracies in the representations made by Morris in the Settlement Agreement. This arbitration award was later confirmed by the United States District Court for the Northern District of Ohio and Shaw Steel's consent judgment against Morris was entered.

On December 23, 1997, Morris filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois. Although Shaw Steel argued that the money owed to it by Morris pursuant to the arbitration award and consent judgment was not dischargeable in bankruptcy under 11 U.S.C. sec. 523(a)(2)(B), the bankruptcy court disagreed. The bankruptcy court held that Morris's debt to Shaw Steel was dischargeable because Shaw Steel could not show that its reliance on Morris's representations was reasonable. This determination was affirmed by the district court, and Shaw Steel now appeals.

II. Analysis

"In the ordinary course of bankruptcy, the debtor's assets are applied to the payment of his debts and, even though the assets will usually be insufficient to pay those debts in full, he will emerge from bankruptcy with the unpaid balance discharged . . . ." McClellan v. Cantrell, 2000 WL 876933, at *1 (7th Cir. July 5, 2000). In this case, however, Shaw Steel contends that Morris's debt is exempt from a general discharge under Chapter 7. Specifically, Shaw Steel argues that because Morris's debt stems from his fraudulent misrepresentations as to his financial condition, that debt is excepted from discharge under 11 U.S.C. sec. 523(a)(2)(B). See, e.g., FDIC v. Meyer (In re Meyer), 120 F.3d 66, 68 (7th Cir. 1997) (stating that "debts [that] can survive [bankruptcy] whole despite a general discharge" include "those that a debtor incurred with the aid of fraud and deceit"). In considering the bankruptcy court's determination that Shaw Steel did not reasonably rely on Morris's statements regarding his financial condition, we recognize that "'exceptions to discharge are to be constructed strictly against a creditor and liberally in favor of the debtor.'" Goldberg Securities, Inc. v. Scarlata (In re Scarlata), 979 F.2d 521, 524 (7th Cir. 1992) (quoting In re Zarzynski, 771 F.2d 304, 306 (7th Cir. 1985)). We review the bankruptcy court's legal conclusions de novo and its factual findings for clear error. See In re A-1 Paving & Contracting, Inc., 116 F.3d 242, 243 (7th Cir. 1997).

The statutory provision at issue in this case, section 523(a)(2)(B) of the Bankruptcy Code, provides that:

A discharge . . . does not discharge an individual debtor from any debt--for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--use of a statement in writing--(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive . . . .

11 U.S.C. sec. 523(a)(2)(B); see also In re McFarland, 84 F.3d 943, 946 (7th Cir. 1996); In re Sheridan, 57 F.3d 627, 633 (7th Cir. 1995) ("In order to prevail on a claim under 11 U.S.C. sec. 523(a)(2)(B), a creditor must prove . . . that a debtor made, with an intent to deceive, a materially false written statement regarding his financial condition and that the creditor relied on that statement."). Under section 523(a)(2)(B), Morris's debt to Shaw Steel is presumed to be dischargeable, see McFarland, 84 F.3d at 946, unless Shaw Steel can demonstrate by a preponderance of the evidence that the debt meets the requirements of the statutory exception, see Grogan v. Garner, 498 U.S. 279, 291 (1991); In re Thirtyacre, 36 F.3d 697, 700 (7th Cir. 1994).

The issue in dispute between Morris and Shaw Steel centers on the reasonableness element of section 523(a) (2)(B)'s reliance requirement. See 11 U.S.C. sec. 523(a)(2) (B)(iii); see also Field v. Mans, 516 U.S. 59, 68 (1995) (stating that, in contrast to the less-demanding justifiable reliance standard applied in section 523(a)(2)(A) cases, "[s]ection 523(a)(2)(B) expressly requires . . . reasonable reliance . . ."). The district court held that the bankruptcy court correctly found that Morris's debt to Shaw Steel did not qualify for an exemption from discharge on the ground that Shaw Steel did not reasonably rely on the representations Morris made in the Settlement Agreement as to his financial condition. In reaching this conclusion, the district court found it significant that Melvin Morris, Vice President of Shaw Steel, testified that he had "reservations" about Morris's honesty and that he did not know whether the statements made by Morris in his affidavit were true or false. The district court also noted that Howard Klein, Shaw Steel's investigator, stated that both Melvin Morris and Harry Sulzer, the President of Shaw Steel, did not believe the representations in Morris's affidavit. Moreover, as the district court recognized, Morris's past dealings with Shaw Steel gave the company good reason to doubt his veracity. According to the district court,

Shaw Steel could not have reasonably relied on Morris's affidavit absent prior investigation in light of the legitimate doubts its officers admitted having as to the representations made by Morris in the Settlement Agreement.

Although Shaw Steel acknowledges its burden to establish that it reasonably relied on Morris's statements, it contends that the bankruptcy court applied too strict a standard of reasonableness. In support of this argument, Shaw Steel cites prior judicial interpretations of the reasonableness standard, including a decision of this Court in which we stated that "reasonableness is circumstantial evidence of actual reliance" and that a creditor should not be denied protection against discharge unless the "creditor's claimed 'reliance' on a 'financial statement' would be so unreasonable as not to be actual reliance at all." Northern Trust Co. v. Garman (In re Garman), 643 F.2d 1252, 1256 (7th Cir. 1980)./2 Shaw Steel further notes that one of our sister circuits, relying in part on our decision in Garman, has stated that "[a] district court reviewing a bankruptcy court's determination of reasonable reliance is not 'to undertake a subjective evaluation and judgment of a creditor's lending policy and practices.'" Bank One, Lexington, N.A. v. Woolum (In re Woolum), 979 F.2d 71, 76 (6th Cir. 1992) (quoting Garman, 643 F.3d at 1256). According to Shaw Steel, the bankruptcy court erred in its reasonableness determination because it failed to recognize that "the reasonableness requirement of sec. 523(a)(2)(B) 'cannot be said to be a rigorous requirement, but rather is directed at creditors acting in bad faith.'" Woolum, 979 F.2d at 76 (quoting Martin v. Bank of Germantown (In re Martin), 761 F.2d 1163, 1166 (6th Cir. 1985)).

Although we agree with Shaw Steel's analysis of the relevant precedent and its assertion that district courts are not to use the reasonable reliance requirement of section 523(a)(2)(B) to second-guess a creditor's lending decisions, we cannot conclude that the district court clearly erred in finding that Shaw Steel did not reasonably rely on Morris's representations as to his financial condition, see Fed.R.Bank.P. 8013 (mandating a clearly erroneous standard of review for a bankruptcy judge's findings of fact); In re Bonnett, 895 F.2d 1155, 1157 (7th Cir. 1989) ("[A] bankruptcy court's determination of dischargeability is subject to a clearly erroneous standard of review.") (citing Prairie Prod. Credit Ass'n v. Suttles (In re Suttles), 819 F.2d 764, 765 (7th Cir. 1987)). "The reasonableness of a creditor's reliance should be determined on a case by case basis," Bonnett, 895 F.2d at 1157 (citation omitted), and the

bankruptcy court should not be "overturned 'simply because [the appellate court] is convinced it would have decided the case differently.'" Id. (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985)). Rather, "'[w]here there are two permissible views of the evidence, the [bankruptcy court's] choice between them cannot be clearly erroneous.'" EEOC v. Sears, Roebuck & Co., 839 F.3d 302, 309 (7th Cir. 1988) (quoting Anderson, 470 U.S. at 575). "Under the 'abuse of discretion' standard of review, the relevant inquiry is . . . whether any reasonable person could agree with the [bankruptcy] court." Deitchman v. E.R. Squibb & Sons, Inc, 740 F.2d 556, 563 (7th Cir. 1984).

In this case, the bankruptcy court determined that both the President and Vice-President of Shaw Steel had serious doubts about the truth of Morris's statement of his financial condition, a conclusion that was based largely on the bankruptcy court's observation of the witnesses and their testimony. See Bonnett, 895 F.2d at 1157 (stating that appellate courts should give particular deference to the bankruptcy court's evaluation of witness testimony). The bankruptcy court further found that Shaw Steel's concerns about Morris's veracity were justified by the company's past dealings with Morris. In spite of its questions as to Morris's truthfulness, however, Shaw Steel entered into a Settlement Agreement with Morris without engaging in any attempt to ascertain Morris's true financial condition. While we understand that the concept of reasonable reliance does not generally require creditors to conduct an investigation prior to entering into agreements with prospective debtors, such a precaution could be the ordinarily prudent choice in circumstances where the creditor admits that it does not believe the representations made by the prospective debtor. See Coston v. Bank of Malvern (In re Coston), 991 F.2d 257, 261 (5th Cir. 1993) (stating that when determining reasonable reliance, "[t]he bankruptcy court may consider, among other things: whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; whether there were any 'red flags' that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations"). Under these circumstances, the bankruptcy court's determination was a permissible one, and we cannot conclude that the court clearly erred in finding Shaw Steel's reliance unreasonable.

III.  Conclusion

Because we determine that the bankruptcy court did not clearly err in finding that Shaw Steel's reliance on Morris's representations was not reasonable, we AFFIRM the decision of the district court.

/1 Paragraph 4 of the Settlement Agreement stated that:

The parties acknowledge that this Agreement has been entered into, in part, based upon the following representations, only:

a. Those contained in the Affidavit of Financial Condition attached hereto and incorporated herein as Exhibit B; and

b. That Defendant's personal financial condition has not materially changed since his execution of the Affidavit of Financial Condition;

c. That to the best of Defendant's knowledge, there are no trust agreements in existence in which Defendant, his wife, nor any member of his immediate family has any present or future interest; and

d. That Defendant has not been released of any liability he has to MNC related to its loans to O.L. Anderson Company, a Delaware corporation.

/2 Although Garman involves the interpretation of section 17(a)(2), the predecessor statute to section 523(a)(2)(B)(iii), that case's interpretation of reasonable reliance applies with equal force to section 523(a)(2)(B)(iii) because "Congress clearly indicated that section 523(a)(2)(B)(iii) is merely a codification of the cases construing section 17(a)(2)." First Nat'l Bank of Lansing v. Kreps (In re Kreps), 700 F.2d 372, 376 (7th Cir. 1983).